With case number four, this is appeal 22-3068 Wilson v. Castaneda. Mr. Lindegar, let's begin with you. Thank you, Your Honors. May it please the court, good morning. My name is Michael Lendinger and I represent the plaintiff, appellant Malcolm Wilson today. Your Honors, this case boils down to a simple equation. Does the statement, was later sent to an outside hospital for his injuries, plus the statement, he was doubled over in pain, equal up to $100,000? As set forth in Wilson's briefing, the answer to that question is no. Disciplinary hearing Castaneda did not provide any evidence of the amount of the up to $100,000 restitution sanction for costs associated with Wilson's disciplinary infraction. Castaneda did not afford Wilson the due process protections afforded by the Supreme Court in Wolf and Hill and accordingly violated Wilson's due process rights. Well, there was a Wolf hearing. The question as has been posed by the appellant here is, is there a due process violation? And what I'd be interested in the benefit of your thoughts on, Mr. Lindegar, is we've got law and the Supreme Court's got law that state procedure requiring federal procedure, that type of an argument doesn't follow. That a violation, for example, of a state administrative code does not necessarily equate with a violation of the federal due process. Can you address that for us? Absolutely, Your Honor. We're not addressing or we're not arguing that violations of the IDOC policies were violated. We do cite to the IDOC policies in the briefing as support for our argument, particularly on what Officer Castaneda maybe could have done. But our arguments are rooted in federal due process case law, both with Wolf and Hill and this course jurisprudence. So are you addressing or challenging the some evidence standard or its application? Both, Your Honor. Well, Your Honor, the court asked three questions in its initial order. The court first asked whether some evidence of the amount owed is necessary to satisfy due process requirements in relation to a restitution sanction. It is. The standard is the same standard. It's lenient. It's in Hill. Absolute precision is not required, but there has to be some evidence of the amount. If not, correctional officers will have free reign to assess wholly speculative assessments bearing no relation to the actual injury. We're not advocating for a bright line rule that medical bills or invoices have to be presented. Evidence of the amount can be conveyed to the inmate, to the prisoner, in a variety of ways. We cite just one of them, the Freeman v. Carroll case out of the Tenth Circuit. There was a memorandum summarizing the amounts, not the actual bills provided to the inmate, but a memorandum summarizing the costs. That would be sufficient. Officer Castaneda did not provide any evidence of the amount itself, and that is a violation of Wilson's due process. It seems to me we have Castaneda, in your theory, not providing the evidence or any evidence now or later at the time of the hearing or ever because Mr. Wilson gets back this notice that there is none. Should we be looking at that, too, when we look at what does the sum evidence require standard? That's my question. Yes, Your Honor, that was another one of the questions that the court presented in its initial order requesting briefing. The sum evidence of the amount owed may be relied on or after the disciplinary officer imposes a restitution sanction, so long as the officer comports with the Wolf Hill due process requirements. The key issue with Your Honor's question is the prisoner must be given a chance to challenge the sum evidence of the amount prior to the deprivation of the property, a pre-deprivation challenge. That did not happen here, Your Honor. I guess my question is here, even post-deprivation, he wasn't provided anything. You're absolutely right, Your Honor. We're two years later, and we still haven't seen any evidence of the amount itself. And you're alleging a violation of a pre-deprivation remedy. Yes, Your Honor. Yes. There's a variety of ways Officer Castaneda could have held a different hearing later in time once the evidence materialized, but that evidence still has not materialized. Mr. Wilson had, most recently in January of 2024, almost a year and a half after the incident, after the restitution sanction issued, another deduction from his commissary account. I guess my question is, is the absence, even to this day, of any numbers, support for the insufficiency of the evidence at the pre-deprivation stage? Absolutely, Your Honor. And that just illustrates the premature dismissal of this case at the screening stage that the district court engaged in. At a minimum, Mr. Wilson is entitled, he had set forth a federal due process claim, articulated it very clearly in his complaint. The district court applied the wrong standard. In fact, instead of viewing the facts in light of Mr. Wilson's favor, it did the opposite. It construed more than minor injuries based on pure conjecture. At a minimum, this district court should have allowed Mr. Wilson's complaint to see the light of discovery, and that's what we're asking for the court to do here, Your Honor. Just to follow up on that, Your Honor's point, Mr. Wilson did not have a chance pre-deprivation to contest the up to $100,000 sanction because no evidence was provided. The Supreme Court in Wolf stated, though, that some kind of hearing is required at some time before a person is finally deprived of his property interests. Wilson never had that here. He's never been able to challenge any evidence of the amount itself. So he had a hearing, but you're saying a hearing to actually challenge the evidence where the figure is set? It doesn't have to be a separate hearing. It could have been all together, Your Honor. And I think what's important, there's two cases, if you read the Supreme Court in Wolf and Hill, and this court's decisions in the Williams v. Wright case and the Ton v. Dittman case cited multiple times in Wilson's briefing. If you read all of those together, in sum, if a prisoner has the ability to challenge both the existence and the amount of the liability and the restitution sanction at a pre-deprivation hearing, all in the same hearing, federal due process rights are not violated. That did not happen here, Your Honor. At most, Mr. Wilson was able to forward a self-defense argument, challenge the liability aspect of his disciplinary infraction, even challenge potentially the non-restitution sanctions, the restrictive housing and such that flowed from the liability finding. But once Castaneda did everything together, issued the restitution sanction of the up to $100,000 without the sum evidence, any evidence, not sum evidence, without any evidence of the up to $100,000 restitution amount, that's where the federal due process, Wilson's federal due process rights were violated. Well, there were statements. One was more detailed than the other. We know an ambulance obviously took the individual with the cane away, so there's some expenses. It's, that's why, that goes to my question of challenging what occurred here in terms of in theory or challenging how that theory was applied. And you've said both. I do, Your Honor. We are challenging both. And respectfully, Your Honor, we actually don't know if an ambulance was used. All the statement said was the inmate was later sent to an outside hospital for his injuries. We don't know if an ambulance was called, which I concede would be more expensive than if a correctional facility just took that inmate in a van and maybe charged for mileage, you know, under the government standard. But that's precisely the point, Your Honor. There are no details in the record regarding any purported injury. No body part was even mentioned. No description of the treatment and no information on the method of transport to the outside hospital, which is not an insignificant fact. And maybe, it might be clear if just, we're not contesting the liberty interest, which resulted in him losing some credit. We're contesting here, Mr. Wilson is only contesting the property interest and that he was denied due process as to the property interest. Precisely, Your Honor. And so, when we're looking at the property interest only, is the contention that he was denied some evidence that would substantiate the officer's estimation of up to $100,000? Exactly, Your Honor. Would you like to preserve the remainder of your time? Yes, Your Honor. I forgot the yellow light went on. Thank you, Mr. Lindgren. Thank you. We appreciate your appearance here and we will give you some rebuttal time. Mr. Yoke, we'll move to you.  Good morning, and may it please the Court. Wilson is the master of his complaint, and his original complaint in the district court failed to state a federal due process claim following his prison disciplinary hearing. He was found guilty of battery at the hearing and sanctioned, and his federal complaint alleged that there was no evidence of the battery and no evidence of medical bills to support the imposition of restitution as a sanction. But his complaint and the documents that he attached showed that there was some evidence to support the battery and that there was some evidence to import imposition of a sanction of restitution at the time of the hearing, and that satisfies federal due process. At the time of the disciplinary hearing, the amount of evidence required is, in fact, some evidence, and that's true for the sufficiency of the allegation and also for imposing restitution as a sanction. And the review of the video showed that the victim was battered, and the statement that he was transported to an outside hospital provided that evidence. I'll argue it this way. So the court has evidence that the victim was battered and that the victim was later taken to the hospital. What if the victim got to the hospital and he felt better by the time he got there? We don't know if the hospital is 30 minutes away, an hour away, 20 minutes away. It can happen. Some time passes. He feels better, so he turned around and come back to the prison. What if he got to the hospital and they assessed him and they said, what you need is over-the-counter ibuprofen and ice. So take these pain meds and ice. He's returned to the prison. Or what if he got to the hospital and he needed some serious intervention like surgery or some other serious intervention? We don't know which of those three scenarios happened. They're very different scenarios. Why is it proper to infer at this complaint stage the most expensive and worst outcome as support for up to $100,000 for the district court? Why is that not an inference against Wilson at the complaint stage? So at the complaint stage, there's a few things, I think, to unpack. What Wilson alleged in his complaint was that there was simply no evidence, which I think is important. I think that there's an also important to distinguish the difference between imposing. So Wilson's pro se. Yes. Okay. He said no evidence. Let's say he had said insufficient evidence. Are we in the same place? When we look at what he attached to his complaint that established that there was some evidence, I think that's the same thing, and that there was some evidence. And it's, I think, important also to consider that the cap operates simply as a cap. It's not a finalized amount. There are mechanisms for Wilson and offenders like him to challenge those amounts later. But to date, he's received nothing. He's told us the debits are still coming out of his account, and time has passed, and he's still received nothing that could substantiate where in this scale between zero and 100,000, he's going to have to stop paying. So to date, he can only assume he's been punished to pay all the way to 100,000. He's been not told anything else. I would say that the record as we have it in front of us is that we don't know what he has or has not received. What we have from his record is one request that was made in July, which was a couple of weeks after the second stage appeal, the central office appeal. What we have showing restitution, what looks to be restitution deductions, are in his disclosure statements for the filing fees. And so there's nothing in this record that shows us that the facility has never received a bill and that the facility is making up these amounts. So what about where they tell him there is none? He asks for something, and they say there's nothing. What do you make of that? I think that that is one. It could be one of two things. One, it could be what he asked for was documentation that he asked for the order or an order from a court that was not there. And it's also possible that medical bills were not available yet. The incident happened at the end of April. He makes his request in July. That's not an inordinate amount of time, I think, for medical billing to come through. And isn't the important question whether that's a federal cause of action? Indiana's got this policy that says if it's not possible to determine the amount of medical restitution at the time of the hearing due to ongoing medical treatment or delay in receiving the bills, the officer may assess a medical expense restitution sanction up to an estimated amount. That's the code. He can't sue on the code. That would be bringing a federal claim on a state disciplinary code, correct? Right. And that's why I think it's important, again, to distinguish between the time of the hearing and what happens at the hearing and these debits that look to have occurred in his commissary account later. He may have other claims against other prison officials. They just may not be against Lieutenant Castaneda for her conduct and whether he received due process as required at the disciplinary hearing itself. And what the district court, I think, saw in his complaint was he received notice. He was able to defend himself at the hearing. He requested video review. That review was completed. Lieutenant Castaneda then issued a written finding with issuing her reasons for the decision and the decision to impose restitution. And the district court said that satisfies due process for the hearing. And the complaint that I have in front of me and the administrative appeals of the disciplinary process that Wilson raised were all about the hearing and about the process he received at the hearing. And so even in filing his lawsuit, it was about seven months from the time that he filed his lawsuit to the time that the district court issued its order denying his motion to reconsider the dismissal. And at no point did Wilson suggest that he had other claims against other officials for these amounts. So the point being there is that there may be other claims that he has. They just may not have a due process claim under the Wolf Hill framework for what occurred at the hearing. And so I guess looping back to those Hill factors, and this is where my question was going just a moment ago, we focused a lot on what substantiated the need to impose this sanction. So does Hill in the direction from the Supreme Court overlay when we're looking at restitution? I understand what the Indiana policy is, and that's up to. But we have this Hill language that says there must be some evidence before the property interest is taken. And so is there any evidence to support the restitution up to $100,000? I guess what I'm asking is where do we pull this number from? Right, and I think that it's important, I think, to distinguish between a fixed amount and a cap. And what the cap does is, as an example, if he had suffered a broken hip and needed extensive surgery, a cap would protect Wilson in this case. That could easily balloon into more than $100,000. It's very different than a broken window where a facility could have an estimate or even a full repair bill within even a week, and there was only a week between the incident and the disciplinary hearing itself. And so it's just different when I think we're dealing with medical bills and restitution. And so a cap is not a final number. And to get back to was there some evidence to impose the sanction itself of restitution, the answer is yes. My focus is just on the amount itself. On the amount. I think the amount, being subject to refinement later, comports with due process. And, again, it's because Wilson would have other ways to challenge the amounts as they're debited. He may have other claims against the officials who debit those amounts. And the state is going to, at some point, have to present bills or something. The state is not saying that it can debit his account indefinitely. It's just at the time of the disciplinary hearing itself, that amount does not need to be proven or shown because we have to move quickly in prison disciplinary hearing processes. Inmates are living in close contact with each other, and there are those other important factors for moving swiftly, which is different than, I think, a civil case or a criminal case. So the argument is that HEAL would not apply in the restitution context? I think it applies in that you have to have some evidence to support issuing, imposing the restitution sanction. Okay. Because he does have a property interest. Thank you, Mr. Yoke. Mr. Lindegar, we'll go back to you with two minutes for rebuttal. Thank you. Thank you, Your Honor. If I knew I had two minutes, I would have written a little bit more. As it stands, Your Honor, thank you. Addressing a few points that the Attorney General made, as he did in his brief, he's focused on restitution as a sanction. There is nothing in the record supporting the amount of the restitution versus supporting restitution as a sanction. Those are two separate and distinct items. The AG said there are mechanisms for Mr. Wilson to challenge the amount later. I don't know what mechanisms they are. The AG has not disputed that Mr. Wilson has exhausted all of his administrative remedies. He's tried to appeal this restitution order as well as the disciplinary hearing finding. All the way up the chain, it's set forth in the record, and now we're here. This is his last chance to challenge the restitution amount. The AG also stated that Castaneda provided reasons for her finding of the restitution, the up to $100,000 amount. She did no such thing. On SA-9 in the record, Castaneda's reasons just merely cited to the video snippet summaries. She did not provide any additional analysis, no written full write-up of what occurred. Finally, the AG conceded that Mr. Wilson's account cannot be debited indefinitely. But when does that stop? He has more than a decade left in prison the last time I checked. Is he going to be deducted money from his account every January, middle of the year, without any explanation, without any evidence supporting this incident that happened in July of 22? That is not sustainable. And for those reasons, Your Honor, we ask that this court reverse the district court, allow Mr. Wilson's complaint to proceed and remand with instructions to serve his complaint on Officer Castaneda. Thank you. Mr. Linderger, you were appointed by the court, and you have our great thanks, you and your firm, for all your hard work. So thank you for your submissions. Mr. Yoke, thank you, as well as the AG's office, in case we take another vote. Thank you, Your Honor.